**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **TORUS VENTURES LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**NETQUOTE, INC.,**<br><br>Defendant. | Case No. 7:26-cv-00355-DC |

**DEFENDANT NETQUOTE, INC.'S RULE 12(b)(6)**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. NATURE AND STAGE OF THE PROCEEDINGS .......... 2
III. STATEMENT OF FACTS .......... 2
IV. LEGAL STANDARD .......... 5
A. Rule 12(b)(6) .......... 5
B. The Law of 35 U.S.C. § 101 .......... 6
V. ARGUMENT .......... 7
A. *Alice* Step One: The Claim Is Directed to the Abstract Idea of Double Decryption. .......... 8
B. *Alice* Step Two: Claims Recite No Inventive Concept. .......... 11
C. Claim 1 Is Representative and None of the Remaining Claims Adds Anything Patent-Eligible. .......... 14
D. There Are No Claim Construction or Factual Disputes Preventing a Ruling at the Rule 12 Stage. .......... 16
E. Alternatively, Issue Preclusion Independently Bars Plaintiff's Claims. .......... 16
VI. CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptive Streaming Inc. v. Netflix, Inc.*,
836 F. App'x 900 (Fed. Cir. 2020) ....................................................................6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014).................................................................................... *passim*

*Ancora Technologies, Inc. v. HTC America, Inc.*,
908 F.3d 1343 (Fed. Cir. 2018)...........................................................................10

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016)...........................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
687 F.3d 1266 (Fed. Cir. 2012).......................................................................6, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................5

*Bilski v. Kappos*,
561 U.S. 593 (2010)...........................................................................................5, 6

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)..................................................................11, 13, 18

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)..............................................................................12

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017)..................................................................14, 16, 17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014)..................................................................13, 14, 17

*Contiguity, LLC v. Conduent Bus. Servs., LLC*,
No. W-23-CV-00038-XR, 2024 WL 252068 (W.D. Tex. Jan. 22, 2024) ..............................16

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011)........................................................................7, 11

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980)....6

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ....6, 11

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020)....12

*Gottschalk v. Benson*,
409 U.S. 63 (1972)....6

*Linfo IP, LLC v. Interactive Life Forms, LLC*,
2026 WL 526368 (W.D. Tex. Feb. 25, 2026) (Counts, J.) ....16

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)....7

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013)....17

*Optis Cellular Tech., LLC v. Apple, Inc.*,
139 F.4th 1363 (Fed. Cir. 2025) ....13

*Pace v. Bogalusa City Sch. Bd.*,
403 F.3d 272 (5th Cir. 2005) (*en banc*) ....17

*Parker v. Flook*,
437 U.S. 584 (1978)....6

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*,
161 F. Supp. 3d 325 (D. Del. 2015), *aff'd*, 671 F. App'x 777 (Fed. Cir. 2016)....6

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ....13, 14

*RFC Lenders of Tex., LLC v. Smart Chem. Sols., LLC*,
743 F. Supp. 3d 911 (W.D. Tex. 2024)....8, 15

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017)....9

*Torus Ventures LLC v. Cawley Partners, LLC*,
2025 U.S. Dist. LEXIS 123392 (E.D. Tex. June 30, 2025).... *passim*

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)....10

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)........................................................5, 8

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) ..........................................................................................6, 11

*W. Digit. Techs., Inc. v. Viasat, Inc.*,
No. 22-cv-04376-HSG, 2023 WL 7739816 (N.D. Cal. Nov. 15, 2023)....................8, 9, 10, 11

*Washington v. Caterpillar Inc.*,
No. 6:24-CV-00310-EG-DTG, 2025 WL 782305 (W.D. Tex. Mar. 3, 2025),
*r&r adopted*, 2025 WL 1091929 (W.D. Tex. Apr. 7, 2025) ...................................................15

*Westwood Chem., Inc. v. United States*,
525 F.2d 1367 (Ct. Cl. 1975)..................................................................................................17

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) ..................................................................................................11

**Statutes**

35 U.S.C. § 101.................................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 8(a) ..................................................................................................................1

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 5, 16

## I. INTRODUCTION

Just months ago, Judge Gilstrap of the Eastern District of Texas held all claims of U.S. Patent No. 7,203,844 (the "Invalidated '844 Patent") ineligible for patent protection under 35 U.S.C. § 101 because they are directed to the abstract idea of "encrypting data that has already been encrypted" and contain no inventive concept. *Torus Ventures LLC v. Cawley Partners, LLC*, 2025 U.S. Dist. LEXIS 123392, at *12–13 (E.D. Tex. June 30, 2025) ("*Torus Ventures I*"). Plaintiff there—who also is Plaintiff here—did not appeal that ruling.

In this case, Plaintiff asserts infringement of U.S. Patent No. 7,457,968 (the "'968 Patent"). The '968 Patent is a continuation of the Invalidated '844 Patent. The patents have the same inventor and share identical specifications. They also are directed to subject matter that, for patent eligibility purposes, is indistinguishable. The Invalidated '844 Patent claims the encryption side of a double encryption scheme; the asserted '968 Patent claims the decryption side of the same scheme. Like the Invalidated '844 Patent, the '968 Patent's claims add no inventive concept beyond the claimed abstract idea.

As described in more detail in Section V.C below, Claim 1 of the '968 Patent is representative: not only does the Complaint treat it as representative, but the other claims add nothing to Claim 1 for eligibility purposes. However, if for any reason the Court were to find Claim 1 is not representative, then under Rule 8(a) and Rule 12(b)(6) it should also find that the Complaint does not give proper notice or state a plausible claim for infringement of any other claim.

Resolving the issue of patent eligibility does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, Defendant netQuote, Inc. respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. NATURE AND STAGE OF THE PROCEEDINGS

In 2025, Plaintiff sought to license the invalid and expired Invalidated '844 Patent to Defendant. Defendant did not engage. To date, Torus Ventures has filed more than 145 cases, asserting the same two (expired) patents from the same patent family. It began its campaign by asserting the Invalidated '844 Patent—one found invalid upon the first litigated challenge in 2025.

Earlier this year, Plaintiff began a new litigation campaign, this time asserting its equally invalid continuation '968 Patent. On September 4, 2026, as part of a second wave of this campaign (having quickly dismissed all of the initial wave of cases), Plaintiff filed its present Complaint accusing Defendant of infringing at least Claim 1 of the '968 Patent by using the ubiquitous TLS 1.3 protocol (the security protocol used by nearly every secure HTTPS website, browser, and e-mail server on the planet) for Defendant's website. *See* Compl., Ex. 2. This is the same ubiquitous TLS 1.3 internet security protocol Plaintiff accused every defendant of using to infringe the Invalidated '844 Patent, and that it has accused every other defendant of using to infringe its currently asserted '968 Patent.

## III. STATEMENT OF FACTS

The '968 Patent is a continuation of the Invalidated '844 Patent. It shares the identical specification, disclosure, and sole named inventor. The '968 Patent relates to "the protection of digital data through the use of encryption," '968 Patent at 1:30–32, but does not purport to invent any new encryption or decryption algorithm. Rather, it concedes that it uses only conventional "digital security algorithms [that] can be readily gleaned through a perusal of online information or via the various publications and patents which examine this subject." *Id.* at 2:4–7. In plain terms, the '968 Patent describes the most generic functional steps of a standard decryption process—*i.e.*, obtaining and decrypting data:

| Claim Language ('968 Patent, cl. 1) | Claimed Idea |
|---|---|

| | |
|---|---|
| "A method for a security protocol for protecting digital content, comprising:" | Protecting digital data |
| "obtaining a first decryption algorithm from a first bit stream;" | Obtaining digital data |
| "decrypting the remainder of the first bit stream to yield a first decrypted bit stream, wherein the decryption of the remainder of the first bit stream is done utilizing the first decryption algorithm obtained from the first bit stream;" | Decrypting digital data |
| "obtaining a second decryption algorithm from the first decrypted bit stream;" | Obtaining digital data |
| "decrypting the remainder of the second bit stream to yield a second decrypted bit stream, wherein the decryption of the remainder of the second bit stream is done utilizing the second decryption algorithm obtained from the second bit stream." | Decrypting digital data again |

Every building block of the method is conventional. Specifically, the specification admits:

- The claimed method runs on, but does not improve the function of, general-purpose computers. *Id.* at 5:41–43.
- The claimed "bit stream" is any generic digital data. *Id.* at 2:43–47.
- The claimed method uses any generic, standard encryption technique. *Id.* at 2:64–67, 5:63–64.
- The embedded decryption code is just more data. *Id.* at 4:32–38 ("[T]he protocol **makes no distinction between** types of digital data, whether the data be media streams to be protected … **the executable code required to decrypt the encrypted code** required to play those streams, the keys to be used along with the decryption code, etc., etc.") (emphasis added).

Comparing the Invalidated '844 Patent to the '968 Patent demonstrates that both patents claim the same abstract double encryption/decryption idea from opposite sides. Where one patent encrypts, the other decrypts. The Invalidated '844 Patent locks data twice with two keys, and the '968 Patent reverses it by unlocking the same data twice with the same two keys. Step 1 of the '968 Patent obtains the key from Step 4 of the Invalidated '844 Patent. Step 2 of the '968 Patent uses that key to decrypt the encrypted data of Step 3 of the Invalidated '844 Patent. Step 3 of the '968 Patent obtains the key from Step 2 of the Invalidated '844 Patent. And Step 4 of the '968

Patent uses that key to decrypt the data encrypted in Step 1 of the Invalidated ’844 Patent.

| | **Invalidated ’844 Patent Claim 1** | **’968 Patent Claim 1** |
|---|---|---|
| Preamble | “A method for a recursive security protocol for protecting digital content, comprising:” | “A method for a security protocol for protecting digital content, comprising:” |
| Step 1 | “encrypting a bitstream with a first encryption algorithm;” | “obtaining a first decryption algorithm from a first bit stream;” |
| Step 2 | “associating a first decryption algorithm with the encrypted bit stream;” | “decrypting the remainder of the first bit stream to yield a first decrypted bit stream, wherein the decryption of the remainder of the first bit stream is done utilizing the first decryption algorithm obtained from the first bit stream;” |
| Step 3 | “encrypting both the encrypted bit stream and the first decryption algorithm with a second encryption algorithm to yield a second bit stream;” | “obtaining a second decryption algorithm from the first decrypted bit stream;” |
| Step 4 | “associating a second decryption algorithm with the second bit stream.” | “decrypting the remainder of the second bit stream to yield a second decrypted bit stream, wherein the decryption of the remainder of the second bit stream is done utilizing the second decryption algorithm obtained from the second bit stream.” |

The following graphic illustrates the relationship between the ’844 Patent and the ’968 Patent:




## IV. <u>LEGAL STANDARD</u>

### A. <u>Rule 12(b)(6)</u>

To survive a Rule 12(b)(6) motion, a complaint's well-pleaded factual allegations are taken as true, while legal conclusions are given no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal citations and quotations omitted).

Patent eligibility under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). A § 101 inquiry is properly determined at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring).

Nor is claim construction required. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B. <u>The Law of 35 U.S.C. § 101</u>

The Patent Act enumerates four types of patentable inventions: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. On the other side of the coin, there are three categories of invention that—no matter how innovative—are not eligible to receive a patent: laws of nature, physical phenomena, and, at issue in this case, abstract ideas. *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980); *Bilski*, 561 U.S. at 611–12.

Classic examples of abstract ideas ineligible for patent protection are mathematical formulas and algorithms. *See Gottschalk v. Benson*, 409 U.S. 63, 71–72 (1972) (algorithm for converting numerical data); *Parker v. Flook*, 437 U.S. 584, 594–95 (1978) (mathematical formula). Computer technologies that do no more than manipulate data—such as encoding, compressing, or encrypting it—without improving the functionality of the computer itself are routinely held to be abstract. *See, e.g.*, *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903–04 (Fed. Cir. 2020) (converting video data from one format to another); *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1351–53 (Fed. Cir. 2021) (the "claimed 'encrypted authentication information' here is merely a collection of conventional data combined in a conventional way that achieves only expected results"); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 531–34 (Fed. Cir. 2020) (a "black box" data security method that does not provide a "specific technique"); *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 333 (D. Del. 2015), (claim that "receiv[ed] an encrypted control signal and encrypted information, decrypt[ed] the control signal, us[ed] the signal to decrypt the information, and then present[ed] programing" was abstract because the claims recited the "abstract idea of

decryption," which is the same as converting information between formats), *aff'd*, 671 F. App'x 777 (Fed. Cir. 2016).

Determining whether a patent claim covers an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Second, if the claim is directed to an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Thus, "encrypting a bit stream of data that has already been encrypted and associated with its decryption algorithm, which fails to provide any specific technique for how the manipulation of the data is to be performed, is insufficient to render the claim non-abstract." *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *17 n.4. Using a general-purpose computer to perform this unbounded idea "such that it is not limited to any specific technological improvement" lacks an inventive concept. *Id.* at *25–26.

## V. <u>ARGUMENT</u>

All claims of the '968 Patent are invalid under the two-step *Alice* framework. Although the patent contains 42 claims, for the reasons discussed in Section V.C below, the Court should treat Claim 1 as representative for purposes of this Motion. At step one, the claims are directed to the abstract idea of decryption: specifically, decrypting data twice using two different algorithms that are carried within the data stream itself. That idea is the mirror image of the double encryption that

Judge Gilstrap held abstract when he invalidated every claim of the ’968 Patent’s parent. *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *17. At step two, the claims supply no inventive concept: they recite generic “decryption algorithm[s]” applied to a generic “bit stream” using conventional, general-purpose computing, and merely repeating an abstract step does not make it inventive. *See Alice*, 573 U.S. at 217, 225–26; *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *24–26.

### A. ***Alice*** **Step One: The Claim Is Directed to the Abstract Idea of Double Decryption.**

#### 1. The Claim Recites Nothing More Than Decrypting Data Twice.

Claim 1 of the ’968 Patent fails step one of the *Alice* analysis because it covers nothing more than decrypting data twice using two different algorithms–a quintessential abstract idea. *Alice*, 573 U.S. at 217. Under any plausible reading, the claim simply takes a decryption algorithm out of a data stream, uses it to decrypt the stream, and then does the same thing a second time. That is the decryption counterpart of the “longstanding,” “routine,” and “conventional” “multilevel encryption” (encrypting data twice) Judge Gilstrap held to be abstract, *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *11–14, *17, and an extension of the idea—“delivering and deriving a decryption key from a stream of data”—that another court has held abstract. *W. Digit. Techs., Inc. v. Viasat, Inc.*, No. 22-cv-04376-HSG, 2023 WL 7739816, at *3 (N.D. Cal. Nov. 15, 2023).

As shown above, all Claim 1 of the ’968 Patent covers is obtaining conventional decryption algorithms from a conventional data stream and using them to decrypt the rest of the data stream, twice. It describes the most generic functional steps of a standard computer—*i.e.*, obtaining and decrypting data—which makes it an abstraction devoid of a “concrete or tangible form” such that it is not patent-eligible. *Ultramercial*, 772 F.3d at 715; *RFC Lenders of Tex., LLC v. Smart Chem. Sols., LLC*, 743 F. Supp. 3d 911, 919–20 (W.D. Tex. 2024) (claims directed to abstract idea where

they "merely collect electronic information, display information, or embody mental processes that could be performed by humans" (quoting *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346–47 (Fed. Cir. 2017), which summarized prior ineligibility holdings before holding the claims there eligible)).

The '968 Patent does not claim an unconventional system to solve a specific problem or a particular mechanism for improving computing systems. It simply claims an abstract concept, not a specific implementation of that concept. Its claims are therefore invalid for failure to claim patent-eligible subject matter.

2. The Claim Is the Mirror Image of the Claims Held Abstract in *Torus Ventures I*.

Claim 1 of the '968 Patent is the functional inverse of the Invalidated '844 Patent claims. Encrypting and decrypting are two sides of the same operation. Judge Gilstrap found the Invalidated '844 Patent encryption claims to be abstract—and Plaintiff did not appeal. *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *17. If double encryption is abstract, then double decryption is, too.

The Invalidated '844 Patent's Claim 1, which Judge Gilstrap held to be abstract, required "encrypting both the encrypted bit stream and the first decryption algorithm" together into a second bit stream (meaning the algorithm travels inside the stream). *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *14–17. Reading the algorithm back from that stream is simply the same thing in reverse. And identifying the stream as the place the algorithm comes from does not make the idea less abstract. For example, in *Viasat*, a claim to "deriving a key from the received stream of data" and "decrypting the encrypted content using the key derived from the received stream of data" was held directed to an abstract idea because it recited no "practical detail (e.g., how the decryption key is 'delivered' or 'derived' from the stream of data)." 2023 WL 7739816, at *1, *3.

The court added: "the data that is being transmitted just so happens to contain a decryption key, but that is insufficient to render the claim non-abstract." *Id.* at *4. So too here: "obtaining … from a first bit stream" states where the algorithm is found, not how it is extracted, and "decrypting the remainder" states only what is left to decrypt once the algorithm is removed.

3. The Claim Recites No Specific Technological Improvement.

Nor does Claim 1 qualify for the improvement-in-security exception recognized in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). There, the claim was eligible because it "specifically identifie[d] how [the] functionality improvement is effectuated": a license-verification structure was stored "in a particular, modifiable, non-volatile portion of the computer's BIOS"—a hardware location "not previously used" for that purpose—and interacted with distinct memory to verify the program. *Id.* at 1345, 1348–49. Claim 1 of the '968 Patent recites no hardware location, storage mechanism, or interaction among components of any kind; it recites only obtaining and decrypting, in any bit stream, on any hardware. *See* '968 Patent at 5:53–55 ("not hardware specific"). Improved security achieved by a result-oriented claim is not an *Ancora* improvement. *See Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *14–16.

4. The Claim Uses Result-Oriented Functional Language.

The asserted Claim 1 is also invalid because it claims a result without explaining how to achieve that result. This is a hallmark of abstract claims. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way."). As Judge Gilstrap determined with respect to the '968 Patent's parent, it contains "only functional abstraction, not a description of any 'specific technical solution.'" *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *14–15.

Comparison to patent-ineligible claims in other cases confirms that the ’968 Patent is directed to an abstract idea. In *Universal Secure Registry*, 10 F.4th at 1351–53, the Federal Circuit found claims abstract over assertions that the claims solve a problem using “encrypted authentication information.” The court explained there that the “claimed ‘encrypted authentication information’ here is merely a collection of conventional data combined in a conventional way that achieves only expected results.” *Id.* at 1352. Similarly, in *Dropbox*, 815 F. App’x at 531–34, the Federal Circuit found claims directed to data security to be ineligible because the claims “offer[ed] nothing but a functional abstraction,” as opposed to a “specific technique.” *See also Viasat*, 2023 WL 7739816, at *3–4 (claim to deriving a decryption key from a received data stream and using it to decrypt content directed to “the abstract idea of delivering and deriving a decryption key from a stream of data”).

The fact that the operative steps of the claim can be performed by a human with pen and paper confirms its abstractness. Claims covering what humans can do and have done in their minds or with pen and paper, even if more slowly than with computers, are quintessentially abstract. *CyberSource*, 654 F.3d at 1372. And encrypting and decrypting data and messages “has been done for hundreds of years.” *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *17–18 & n.4 (collecting citations). Claim 1 of the ’968 Patent, therefore, is directed to an abstract idea.

**B. *Alice* Step Two: Claims Recite No Inventive Concept.**

Claim 1 does not contain an inventive concept that amounts to significantly more than the abstract idea itself—something sufficient “to *transform* the claimed abstract idea into a patent-eligible invention.” *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021); *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). There is no “inventive concept” where the claim recites “well-understood, routine, conventional activit[ies] previously known to the industry.” *Alice*, 573 U.S. at 225.

1. The Claim Lacks Any Inventive Concept.

The absence of an inventive concept is apparent from the face of the ’968 Patent’s claims. Each of representative Claim 1’s steps recites a result, not a means of achieving it. The claim refers to “a first decryption algorithm” and “a second decryption algorithm,” without identifying any particular algorithm, any new way of decrypting, or any specific technique for locating or extracting an algorithm from the bit stream. Nor does the claim specify the structure or format of the bit stream, where within the stream the algorithm resides, or how the “remainder” of the stream is distinguished from the algorithm it contains. The claim relates to any decryption algorithm, stored in any way, in any bit stream, on any hardware. Even considered as an ordered combination, the steps add nothing inventive: they follow the only sequence in which layered decryption can occur, which is simply the abstract idea recited twice.

Although the specification cannot save the claim, it does confirm a lack of a transformative advancement. *See Ericsson Inc. v. TCL Commc’n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328–30 (Fed. Cir. 2020) (specification “cannot be used to import details . . . if those details are not claimed” (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019))). The ’968 Patent’s specification—identical to that of the Invalidated ’844 Patent—describes only use of generic components to carry out the claimed steps. For example, the specification explains that the claimed “bit stream” can “be reduced to **a stream of 1’s and 0’s** . . . .” ’968 Patent at 2:43–47 (emphasis added). The specification also explains that the claimed decryption “**may utilize a variety of encryption techniques** to better protect digital content . . . .” *Id.* at 2:64–66 (emphasis added). Additionally, the specification states that the methods “**can be implemented in an otherwise general purpose computing system** . . . .” *Id.* at 5:41–43 (emphasis added). As Judge Gilstrap determined, this “makes clear that Claim 1 applies this abstract idea using only generic computer parts and conventional methods.” *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at

*25–26.

The specification further admits that the encryption/decryption protocol is based on "publicly known algorithms" and can be implemented on "any general purpose computing device, given that it has enough time to complete the computation." '968 Patent at 27:54–58. It also represents that the "hardware should ideally be sufficiently general purpose to support a large variety of one-way hashing functions" and that "it is assumed that the actual hardware is general-purpose enough to be used in a non-algorithmically specific manner." *Id.* at 7:46–52, 12:60–63. In essence, the '968 Patent takes the abstract idea described above and applies it using generic computer components and conventional methods. Arranging these conventional components does not amount to "significantly more" than the abstract idea itself. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014).

Critically, Judge Gilstrap already found no inventive concept in the Invalidated '844 Patent's claims—which mirror the '968 Patent's. Judge Gilstrap held: "Repeating an abstract step (such as encrypting already encrypted data) does not, by that repetition alone, amount to something inventive. That is what we have here." *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *24. Nor does repetition of an abstract step make for an inventive architecture. *See id.* at *20–24. The same is true of the '968 Patent's decryption claims: repeating a decryption step "does not, by that repetition alone, amount to something inventive." *Id.* at *24.

And even if double decryption were novel, "a claim for a *new* abstract idea is still an abstract idea." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) (quoted reference omitted); *Optis Cellular Tech., LLC v. Apple, Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025) ("The abstract idea itself cannot supply the inventive concept, no matter how groundbreaking the advance.") (cleaned up); *BSG Tech*, 899 F.3d at 1290 ("a claimed invention's

use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."); *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *29–30 (quoting *PersonalWeb*, 8 F.4th at 1318).

Courts have repeatedly held that the presence of generic hardware and software also does not make an otherwise abstract idea patent-eligible. *See, e.g., Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–80. Because the claims of the '968 Patent are altogether devoid of any "inventive concept," they are patent-ineligible under § 101. *See Alice*, 573 U.S. at 225–26.

### C. <u>Claim 1 Is Representative and None of the Remaining Claims Adds Anything Patent-Eligible.</u>

Where claims are "substantially similar and linked to the same" ineligible concept, it is proper to treat a single claim as representative. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (internal quotation marks omitted); *see also Content Extraction*, 776 F.3d at 1348.

The '968 Patent has 42 claims, four of which are independent (Claims 1, 20, 39, and 41). Independent Claim 20 merely recites a system for performing the method of Claim 1, and its dependent Claims 21–38 are system equivalents of the method dependents. Independent Claims 39 and 41 are method variants that add only the step of determining an indicator in the decrypted stream (Claims 39–40) or obtaining a decryption algorithm from a portion of a decrypted bit stream (Claims 41–42). The dependent claims add only conventional pre- or post-solution activity as shown in the following chart:

| **Pre- or Post-Solution Activity** | **Claims** |
|---|---|
| Decrypting the data using a key | 2–4 |
| The key is in a key data structure | 5–10 |
| The key can be encrypted/decrypted | 11–17 |
| The decrypted bit stream is stored in a cache | 18–19 |
| System equivalents | 20–38 |
| Determining indicators in the decrypted stream | 39–40 |
| Obtaining decryption algorithm using portions of decrypted stream | 41–42 |

None of these limitations causes any dependent claim to be materially different from representative Claim 1, as none is directed to any specialized component or arrangement giving rise to an inventive concept. Using a key, storing a key in a data structure, encrypting a key, and caching decrypted data are themselves generic data-manipulation steps, and rewording the method as a system simply adds a generic computer. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) ("[A]ppending preexisting practice[s] to [] independent claims does not make them patentable."); *RFC Lenders*, 743 F. Supp. 3d at 917–19 (differences that are "at most, minor," and "add[ing] an additional generic component to the mix" do not change the analysis). Claim 1 is thus representative for purposes of the *Alice* analysis. For the same reasons the *Torus Ventures I* court did with respect to the Invalidated '844 Patent, this Court should treat Claim 1 of the '968 Patent as representative of all claims of the '968 Patent for purposes of the § 101 analysis, and should find that every claim of the '968 Patent is ineligible for the same reasons as Claim 1.

Not only is Claim 1 in fact representative for eligibility purposes, but the Complaint and its attached chart only identifies elements of Claim 1 allegedly practiced. *See Washington v. Caterpillar Inc.*, No. 6:24-CV-00310-EG-DTG, 2025 WL 782305, at *2 (W.D. Tex. Mar. 3, 2025), *r&r adopted*, 2025 WL 1091929 (W.D. Tex. Apr. 7, 2025) ("Stating a viable claim for infringement requires Plaintiff to plead facts that plausibly suggest that an accused product meets

each limitation of an asserted claim."). Thus, the Complaint itself treats Claim 1 as being representative. *Cf. Contiguity, LLC v. Conduent Bus. Servs., LLC*, No. W-23-CV-00038-XR, 2024 WL 252068, at *2 (W.D. Tex. Jan. 22, 2024) ("[T]o plausibly allege direct infringement, a party must plausibly allege infringement of each element of at least one exemplary claim."). The Court should hold Plaintiff to its own pleaded treatment.

### D. <u>There Are No Claim Construction or Factual Disputes Preventing a Ruling at the Rule 12 Stage.</u>

As Judge Gilstrap found in *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *30, there are no factual or claim construction issues here that affect the *Alice* analysis. The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found.*, 859 F.3d at 1360 (collecting cases). This Court, too, has recognized that "[e]ligibility may be decided on a motion to dismiss in an appropriate case; the question is whether dismissal is warranted on the record—whether there are no plausible factual disputes after drawing reasonable inferences" in the plaintiff's favor. *Linfo IP, LLC v. Interactive Life Forms, LLC*, 2026 WL 526368, at *1 (W.D. Tex. Feb. 25, 2026) (Counts, J.). This is that "appropriate case." The '968 Patent's specification concedes conventionality, and the Complaint does not allege specific unconventional mechanisms that would require factual development. No claim construction could change the result.

### E. <u>Alternatively, Issue Preclusion Independently Bars Plaintiff's Claims.</u>

Claim 1 is ineligible on the merits. However, collateral estoppel independently bars Torus Ventures from relitigating Judge Gilstrap's determinations. Collateral estoppel applies when four elements are met: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was actually litigated in the prior action; (3) the prior determination of the issue was necessary to the judgment in that action; and (4) the party against whom collateral estoppel is

asserted was a party or in privity with a party in the prior action." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (*en banc*). All four elements are satisfied here.

**The issues are identical.** The issues here are identical because the '968 Patent's claims are functionally equivalent claim formulations linked to the same idea that Judge Gilstrap held ineligible in the Invalidated '844 Patent. Each of his determinations rested on the same specification and disclosure that the two patents share word-for-word. As the Federal Circuit has recognized, in the § 101 context, claims that are "substantially similar and linked to the same abstract idea" may be analyzed together. *Content Extraction*, 776 F.3d at 1348; *see also Cleveland Clinic Found.*, 859 F.3d at 1360 (same). While those decisions applied the representative-claim principle in a single eligibility analysis rather than in a collateral estoppel posture, that distinction is immaterial: issue preclusion turns on the identity of the issues, not on the identity of the patent claims. *See, e.g.*, *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("Our precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply. [Citations]. If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies.").

Nor does the fact that the Invalidated '844 Patent and the '968 Patent are formally distinct patents with different claims change this. The relevant resolved *issues* rested on the shared specification and nature of the claimed invention, and on the representativeness of the claims. Here, the two patents' specifications are word-for-word identical, and, as shown above, the claims of the '968 Patent are the functional inverse of the claims in the Invalidated '844 Patent. Where, as here, a continuation shares an identical specification and the claims cover the same abstract scope, the issues are identical for preclusion purposes. *Id.*; *Westwood Chem., Inc. v. United States*,

525 F.2d 1367, 1372 (Ct. Cl. 1975) ("[A] rule that would limit the application of an estoppel only to specific claims seems to be much too mechanical and ignores the practicalities of patent practice. Moreover, it could well lend itself to abuse. . . . It is the issues litigated, not the specific claims around which the issues were framed, that is determinative.").

Merely reversing the order of steps of the abstract encryption idea to decryption does not transform the ineligible concept into eligible subject matter. *See BSG Tech*, 899 F.3d at 1290. Both patents' formulations describe the same recursive process at the same high level of generality without specifying how any step is accomplished. Because representative Claim 1 of the Invalidated '844 Patent and representative Claim 1 of the '968 Patent are mirror images directed to the same abstract idea, the differences between them do not materially alter the question of invalidity.

The Eastern District's prior determination that the Invalidated '844 Patent's representative claim is invalid therefore resolves the same issue presented by the '968 Patent's claims. The court there held that the specification discloses only conventional, generic components and methods, *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *25–26; that the specification's breadth "weakens and dilutes any claim that the process it describes is somehow unique, unconventional, or unknown," *id.* at *26 n.5; that "[r]epeating an abstract step . . . does not, by that repetition alone, amount to something inventive," *id.* at *24; that the asserted "architectural advancement" of a recursive protocol is "simply the abstract idea" itself, *id.*; and that, even if the ideas were new, "a claim for a new abstract idea is still an abstract idea," *id.* at *29. All of these determinations were grounded in the specification and disclosed subject matter—not in any claim language unique to the Invalidated '844 Patent. Because the '968 Patent shares the identical specification, these determinations necessarily apply with equal force here.

Every determination Judge Gilstrap made in *Torus Ventures I*—that the specification discloses only conventional components, that the specification's lack of specificity forecloses an inventive-concept finding, that repeating an abstract step is not inventive, and, ultimately, that the claims are directed to an abstract idea with no inventive concept—applies with equal force to the '968 Patent, and Plaintiff should be estopped from asserting otherwise.

**The issues were actually litigated.** Before issuing a twenty-one-page opinion addressing each issue in detail, Judge Gilstrap considered briefing from both parties and held a hearing on May 29, 2025. *Torus Ventures I*, 2025 U.S. Dist. LEXIS 123392, at *4–5.

**Each of the determinations was necessary to the judgment.** The court's findings regarding conventionality, the abstract nature of the claims, and the absence of an inventive concept were each essential to its ultimate holding of subject matter ineligibility. *Id.* at *32.

**Torus Ventures was a party to the prior action.** Plaintiff was the plaintiff in *Torus Ventures I*, and it had a full and fair opportunity to litigate these issues. *Id.* at *1.

## VI. CONCLUSION

For all the reasons set forth above, Defendant netQuote, Inc. respectfully requests that the Court grant this Motion and dismiss the Complaint with prejudice. The claims of the '968 Patent are directed to an abstract idea and do not include an inventive concept sufficient to confer patent eligibility; amendment would be futile; and, alternatively, Plaintiff is estopped from arguing otherwise.

Respectfully submitted,

Dated: November 4, 2026.

By: */s/Richard W. Miller*
Richard W. Miller
Georgia Bar No. 065257
(Admitted in W. D. Texas)
BALLARD SPAHR LLP

999 Peachtree Street NE
Suite 1600 Atlanta, GA 30309
Tel: (678) 420-9300
Fax: (678) 420-9301
millerrw@ballardspahr.com

Benjamin N. Simler
California Bar No. 273778
(admitted *pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel: 215.864.8872
Fax: 215.864.8999
simlerb@ballardspahr.com

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

*Attorneys for Defendant netQuote, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2026, a copy of the foregoing was caused to be served upon all counsel of record by ECF filing.

Dated: November 4, 2026.

By: */s/Richard W. Miller*

Richard W. Miller
Georgia Bar No. 065257
(Admitted in W. D. Texas)
BALLARD SPAHR LLP
999 Peachtree Street NE
Suite 1600 Atlanta, GA 30309
Tel: (678) 420-9300
Fax: (678) 420-9301
millerrw@ballardspahr.com

Benjamin N. Simler
California Bar No. 273778
(admitted *pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel: 215.864.8872
Fax: 215.864.8999
simlerb@ballardspahr.com

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

*Attorneys for Defendant netQuote, Inc.*